IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA BOOSE,
                Plaintiff,

                                                CV 07-458-PK

                                                OPINION AND
v.                                          ORDER


TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON,
                Defendant.
_____

PAPAK, Magistrate Judge:

       This action was filed by plaintiff Barbara Boose against defendant Tri-County

Metropolitan Transportation District of Oregon ("TriMet") on March 27, 2007.  Boose seeks

declarative and injunctive relief under Title II of the Americans with Disabilities Act (the

"ADA") and Section 504 of the Rehabilitation Act (the "RA") to require TriMet to modify the

operation of its paratransit program to accommodate her medical condition.  Specifically, Boose

requests that the court order TriMet to dispatch sedan cars or taxis only, rather than buses, in

Page 1 - OPINION AND ORDER

response to her requests for transportation services.  This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1343.

Now before the court are the parties' cross-motions for summary judgment.  Boose argues, in support of her motion (#28), both that the plain language of the ADA and RA and of the implementing regulations of the ADA requires TriMet to make reasonable modifications of its policies and practices where such modifications are necessary to avoid discrimination on the basis of disability and that the requested modification – dispatch of sedan cars or taxis rather than buses – is reasonable as a matter of law.  For its part, TriMet argues in support of its motion (#35) that its paratransit program is itself a reasonable accommodation provided for the benefit of disabled users of public transportation services, and that neither the statutory nor the regulatory language relied upon by Boose requires it to make any further modification to its accommodation.  I have considered the parties motions, oral argument on behalf of the parties, and all of the pleadings on file.  For the reasons set forth below, Boose's motion is denied and TriMet's motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S.Ct. 1261 (1996).  In evaluating a motion for summary judgment, the

district courts of the United States must draw all reasonable inferences in favor of the nonmoving

party, and may neither make credibility determinations nor perform any weighing of the

evidence.  *See*, *e.g.*, *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## FACTUAL BACKGROUND

TriMet, a recipient of federal funding, operates its LIFT Paratransit Program ("LIFT") as

a transit accommodation for the benefit of individuals who cannot use regular, fixed-route buses

due to disability.  Although LIFT has been in operation since before the Americans with

Disabilities Act was enacted, TriMet is required under both the ADA and the Rehabilitation Act

to provide such transit accommodation to disabled persons.  LIFT has been approved by the

Federal Transit Administration ("FTA") as a transit accommodation program.

The LIFT program serves 22,600 clients, providing 3,500 rides per day and over a million

rides per year.  The majority of such rides employ one of the 225 buses in LIFT's fleet, but the

buses are complemented by 15 sedans and, when no LIFT vehicle is available to meet demand,

by contracted-for taxi services.  LIFT operates a call center to coordinate the provision of

paratransit services, and, according to its established, FTA-approved procedures, assigns vehicles

to clients based solely on the times rides are requested and the pick-up locations of the

prospective riders.

Boose has been a LIFT customer since approximately 1996.  Among Boose's allegedly

disabling medical conditions is a vestibular disorder that impacts her sense of balance and causes

her to experience "vertigo, dizziness, lightheadedness and motion sickness."  On January 4, 2006,

Boose obtained a doctor's note requesting that she be permitted to use TriMet sedans or taxis to

Page 3 - OPINION AND ORDER

the exclusion of buses, because she experiences "less dizziness and nausea" when she uses those

vehicles.  On January 13, 2006, plaintiff formally requested "accommodation" of her vestibular

condition based on the doctor's note.  TriMet has not complied with Boose's request.

## ANALYSIS

Title II of the Americans with Disabilities Act prohibits discrimination in the provision of

public services against individuals with disabilities.  *See* 42 U.S.C. §§ 12131, *et. seq.*  Title II,

Part A, of the ADA covers entities providing public services in general, *see* 42 U.S.C. §§ 12131,

*et. seq.*, whereas Title II, Part B, is applicable solely to entities providing public transportation

services, *see* 42 U.S.C. §§ 12141, *et. seq.*  Part A provides generally that "no qualified individual

with a disability shall, by reason of such disability, be excluded from participation in or be denied

the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity."  42 U.S.C. § 12132.  Part B specifies that in the context of

public entities providing transportation services:

> It shall be considered discrimination for purposes of section 12132 of this title . . .
> for a public entity which operates a fixed route system (other than a system which
> provides solely commuter bus service) to fail to provide with respect to the
> operations of its fixed route system, in accordance with this section, paratransit
> and other special transportation services to individuals with disabilities, including
> individuals who use wheelchairs, that are sufficient to provide to such individuals
> a level of service
>
> > (1) which is comparable to the level of designated public transportation
> > services provided to individuals without disabilities using such system; or
> >
> > (2) in the case of response time, which is comparable, to the extent
> > practicable, to the level of designated public transportation services
> > provided to individuals without disabilities using such system.

42 U.S.C. § 12143(a).  Under Section 12143, entities providing public transportation services are

required, on an annual basis, to submit for Federal Transit Administration approval "a plan for

Page 4 - OPINION AND ORDER

providing paratransit and other special transportation services" to individuals whose disabilities do not permit them to use regular fixed-route services.  *See* 42 U.S.C. § 12143(c)(7); *see also* 42 U.S.C. §§ 12143(c)(6), 12143(c)(1).  The FTA then reviews the submitted plan to determine whether it meets the requirements of Section 12143(a), and requires modification of the plan in the event that it does not.  *See* 42 U.S.C. § 12143(d).  Section 12143(e) defines discrimination in the provision of such paratransit services as follows:

> (1) a failure of a public entity to which the regulations issued under this section apply to submit, or commence implementation of, a plan in accordance with subsections (c)(6) and (c)(7) of this section;
>
> (2) a failure of such entity to submit, or commence implementation of, a modified plan in accordance with subsection (d)(3) of this section;
>
> (3) submission to the Secretary of a modified plan under subsection (d)(3) of this section which does not meet the requirements of this section; or
>
> (4) a failure of such entity to provide paratransit or other special transportation services in accordance with the plan or modified plan the public entity submitted to the Secretary under this section.

42 U.S.C. § 12143(e).

Pursuant to 42 U.S.C. § 12134(a), it is the United States Attorney General who is directed to promulgate regulations to implement Part A, while it is the Secretary of Transportation who is directed, pursuant to 42 U.S.C. § 12149(a) (*see also* 42 U.S.C. § 12143(b) for the Secretary's specific authority to promulgate regulations in connection with the provision of paratransit services), to promulgate regulations to implement Part B.   The Attorney General's regulations implementing Part A include the provision that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the

modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). By contrast, the Secretary of Transportation's regulations implementing Part B contain no comparable "reasonable modifications" mandate. *See* 49 C.F.R. §§ 37.1-37.215.

Section 12134(a) expressly clarifies that the Attorney General's regulations "shall not include any matter within the scope of the authority of the Secretary of Transportation." 42 U.S.C. § 12134(a). Similarly, the regulations implementing Part A provide that "[t]o the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12141), they are not subject to the requirements of this part." 35 C.F.R. § 102(b). As a matter of law, therefore, the "reasonable modifications" requirement set forth in the Attorney General's regulations implementing Part A are inapplicable to the provisions of Part B.

In keeping with the foregoing analysis, in *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669 (5th Cir. 2004), the Fifth Circuit held that:

> Because paratransit service is meant to act as the disability complement to established fixed route transportation services, this comprehensive regulatory scheme signals that **no interim extra-plan modification is statutorily or otherwise required by a public entity when the public entity is properly operating under a FTA-approved plan**. **The FTA-approved plan is itself the accommodation to the disabled by the public transportation entity.** It is the violation of the plan itself that constitutes the prohibited discrimination under title II, not the failure to modify the plan to address particularized complaints. [Where an ADA plaintiff] do[es] not assert that [a provider of public transportation services] is operating in a manner that is not in accordance with its FTA-approved paratransit plan . . . , the ADA does not impose a requirement upon [the service provider] to modify its plan to serve [the plaintiff]'s particular demands.

*Melton*, 391 F.3d at 675 (emphasis supplied; footnote omitted). The *Melton* court further held

Page 6 - OPINION AND ORDER

that paratransit services plans are not subject to any "reasonable modifications" requirement

under the implementing regulations.  *See id.*; *see also*, *e.g.*, *Disabled in Action of Pa. v.

AMTRAK*, 418 F. Supp. 2d 652, 658 (E.D. Pa. 2005) (the "reasonable modifications" mandate of

28 C.F.R. § 35.130(b)(7) is inapplicable to providers of public transportation services); Letter of

Finding from FTA Office of Civil Rights Re: FTA Complaint No. 00-0305 (Oct. 30, 2000),

*available at* http://www.fta.dot.gov/civilrights/ada/civil_rights_3966.html (characterizing FTA-

approved paratransit services programs as "a 'safety net' for people who cannot use the fixed

route system," noting that "[u]nder the ADA, complementary paratransit is not intended to be a

comprehensive system of transportation for individuals with disabilities," and finding that

"providing . . . service in whichever type of vehicle [a provider of paratransit services] has

available at the time and location of [the] trip request [is] not . . . a violation [of] the DOT ADA

regulations").

        The analysis does not change under the Rehabilitation Act.  Like Title II of the ADA,

which was expressly modeled after Section 504 of the RA, the RA provides that "[n]o otherwise

qualified individual with a disability in the United States. . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance. . . ."  29

U.S.C. § 794(a).  The regulations implementing the RA specifically prohibit recipients of federal

funding from engaging in any of the following discriminatory actions:

> (1) A recipient, in providing any aid, benefit, or service, may not, directly or
> through contractual, licensing, or other arrangements, on the basis of disability:
>
> (i) Deny a qualified handicapped person the opportunity to participate in or benefit
> from the aid, benefit, or service;

Page 7 - OPINION AND ORDER

(ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not substantially equal to that afforded persons who are not handicapped;

(iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as persons who are not handicapped;

(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits or services that are as effective as those provided to persons who are not handicapped;

(v) Aid or perpetuate discrimination against a qualified handicapped person by providing financial or other assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the recipient's program or activity;

(vi) Deny a qualified handicapped person the opportunity to participate in conferences, in planning or advising recipients, applicants or would-be applicants, or

(vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.

49 C.F.R. § 27.2(b). The RA implementing regulations further provide that public entities subject to the RA "shall comply with all applicable requirements of the Americans with Disabilities Act (ADA) of 1990 . . . including the Department's ADA regulations . . . , the regulations of the Department of Justice implementing titles II and III of the ADA . . . , and the regulations of the Equal Employment Opportunity Commission (EEOC) implementing title I of the ADA . . . ." 49 C.F.R. § 27.19(a).

In consequence, Title II of the ADA and Section 504 of the RA are analytically indistinguishable as applied to the facts of this case, differing functionally only in that the RA is applicable only to services and programs that receive federal funds – such as TriMet – whereas

Page 8 - OPINION AND ORDER

Title II of the ADA applies with equal force regardless of whether federal funding is received.

*See*, *e.g.*, *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (setting out

elements of causes of action under both statutory schemes); *Vinson v. Thomas*, 288 F.3d 1145,

1152 n. 7 (9th Cir. 2002) (when analyzing discrimination claims brought under either Title II of

the ADA or Section 504 of the RA, the courts may consider case law construing either statute

"because there is no significant difference in the analysis of rights and obligations created by the

two Acts"); *see also*, *e.g.*, *Melton*, 391 F.3d at 671 n. 1 ("[j]urispridence interpreting either

section is applicable to both title II of the ADA and section 504 of the Rehabilitation Act").

    Boose argues, to the contrary, that the "reasonable modifications" mandate of 28 C.F.R. §

35.130(b)(7) is applicable to TriMet and other providers of public transportation services.  Boose

acknowledges that 42 U.S.C. § 12134(a) provides that the Attorney General's regulations

promulgated in implementation of Part A are inapplicable to "any matter within the scope of the

authority of the Secretary of Transportation," but argues that the general regulations promulgated

under Part A are nevertheless applicable to public entities providing transportation services.

Boose's chief argument in support relies upon a notice of proposed rulemaking published by the

Secretary of Transportation on February 27, 2006.  Had the proposed rulemaking been adopted, it

would have added new language to the regulations implementing Part B to specify that a

"reasonable modifications" mandate comparable to that applicable under Part A applied to

providers of paratransit services.  *See* 71 F.R. 9761-9769 (Feb. 27, 2006).

    Although the preamble to the proposed rulemaking suggests that the "reasonable

modifications" language of 28 C.F.R. § 35.130(b)(7) could be interpreted as applicable to entities

subject to Part B, and further suggests that the proposed new language would therefore serve as a

"clarif[ication]" only, the proposal would nevertheless have added new provisions comparable to 28 C.F.R. § 35.130(b)(7) to the regulations implementing Part B, rather than merely assigning a clarified interpretation to the existing regulations.  The notice of proposed rulemaking stated, specifically, as follows:

> In proposed amendments to 49 CFR 37.5 and 37.169, the NPRM would **clarify** that transportation providers, including, but not limited to, public transportation entities required to provide complementary paratransit service, must make reasonable modifications to their policies and practices to ensure program accessibility.  * * *

> [T]he DOT ADA regulations do not include language specifically requiring regulated parties to make reasonable modifications to policies and practices.  The Department, when drafting 49 CFR part 37, **assumed** that § 37.21(c) would incorporate the DOJ provisions on this subject, by saying the following:

>> Entities to which this part applies also may be subject to ADA regulations of the Department of Justice (28 CFR parts 35 or 36, as applicable).  The provisions of this part shall be interpreted in a manner that will make them consistent with applicable Department of Justice regulations.

> Under this language, provisions of the DOJ regulations concerning reasonable modifications of policies and practices applicable to public entities, such as 28 CFR 35.130(b)(7), could apply to public entities regulated by DOT, while provisions of DOJ regulations on this subject applicable to private entities (e.g., 28 CFR 36.302) could apply to private entities regulated by DOT.  * * *

> * * *

> [T]he Department believes that it would be useful to amend its rules to **clarify**, nationwide, that public entities that provide designated public transportation, including but not limited to complementary paratransit, have the obligation to make reasonable modifications in the provisions of their services when doing so is necessary to avoid discrimination or provide program accessibility to services.  **The Department will do so by proposing to add language to a number of provisions of its ADA and 504 regulations.**

71 F.R. 9761-9762 (emphasis supplied).  The Department of Transportation sought comment on the proposed new provisions, but did not subsequently implement them.

Boose argues that the proposed rulemaking is entitled to *Chevron* deference, as an agency's interpretation of its own regulations.  However, the Supreme Court has expressly stated that proposed but unimplemented regulations "do[] not represent an agency's considered interpretation of its statute. . . ."  *Commodity Futures Trading Com. v. Schor*, 478 U.S. 833, 845 (1986); *see also United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001) ("administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, *and that the agency interpretation claiming deference was promulgated in the exercise of that authority*") (emphasis supplied); *California Rural Legal Assistance, Inc. v. Legal Services Corp.*, 917 F.2d 1171, 1173 n. 5 (9th Cir. 1990) (citing *Commodity Futures* with approval and declining to consider an agency interpretation contained within a proposed regulation contrary to an implemented regulation); *S. Utah Wilderness Alliance v. Dabney*, 222 F.3d 819, 828-829 (10th Cir. 2000) (refusing to accord any level of deference to draft policies, although published in the Federal Register and subjected to comment procedures, where the policies had not yet been adopted by the agency).

Even in the absence of *Chevron* deference, a less absolute form of deference sometimes referred to as *Skidmore* deference, may apply to some agency interpretations:  "The well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'"  *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998), *quoting Skidmore v. Swift & Co.*, 323 U.S. 134, 139-140 (1944).  Under this lesser deference, "[t]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the

degree of the agency's care, its consistency, formality, and relative expertness, and to the

persuasiveness of the agency's position." *United States v. Mead Corp.*, 533 U.S. 218, 228

(2001), *citing Skidmore*, 323 U.S. at 139-140 (footnotes omitted).

       Here, the position espoused in the proposed rulemaking is at odds with the agency's prior

statutory interpretation as expressed in the FTA's Office of Civil Rights' Letter of Finding dated

Oct. 30, 2000, *supra*, as well as with the plain language of the implementing regulations

discussed above. Moreover, I find the proposed interpretation unpersuasive on its face, in that it

purports to clarify existing language by adding new provisions that, if the interpretation were

correct, would be wholly redundant. Under these circumstances, I conclude that the proposed

rulemaking is no more entitled to *Skidmore* deference than it is to deference under *Chevron*. The

plain statutory and regulatory language therefore controls.

       Under the plain language of the regulations and according to persuasive applicable case

law, public entities are not, to the extent they provide public transportation services, subject to

the reasonable modifications mandate of 28 C.F.R. § 35.130(b)(7). Because no statute or

regulation requires TriMet to modify its FTA-approved paratransit program in response to user

requests for disability accommodation, Boose's claim necessarily fails as a matter of law.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 12 - OPINION AND ORDER

Boose's motion for summary judgment is therefore denied, and TriMet's motion for summary

judgment is therefore granted.

## CONCLUSION

For the reasons set forth above, Boose's motion for summary judgment (#28) is denied,

and TriMet's motion for summary judgment (#35) is granted.  A judgment will be prepared.

Dated this 8th day of October, 2008.

   /s/ Paul Papak                 
Honorable Paul Papak
United States Magistrate Judge